NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2019
Decided May 9, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3674

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 3:09-CR-30084-SMY-1 |
| MINTAI BEDFORD, <br> *Defendant-Appellant.* | Staci M. Yandle, <br> *Judge.* |

## O R D E R

Mintai Bedford violated the conditions of his supervised release when he called the police and threatened that a shooting would occur at the college he was attending—an act later deemed a terrorist threat in violation of Illinois law. 720 ILCS 5/29D-20(a). His supervised release was revoked, and he was sentenced to 47 months and 29 days in prison. Bedford filed a notice of appeal, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Bedford responded to counsel's motion. *See* CIR. R. 51(b).

A defendant has a presumptive right to counsel when he plausibly contests the violations on which revocation of his supervised release is based. *See Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). For appeals of a revocation decision, our practice has been to

apply the *Anders* framework. *United States v. Wheeler*, 814 F.3d 856, 857 (7th Cir. 2016). Counsel's submission explains the nature of the case and addresses the issues that an appeal of this kind might involve. Because the analysis appears thorough, we limit our review to the subjects that counsel discusses and those that Bedford raises in response. *See* CIR. R. 51(b); *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

Counsel and Bedford both consider whether he could challenge the district court's finding that he made a terrorist threat, 720 ILCS 5/29D-20(a), thereby violating the supervised-release condition that he not commit a crime. To support this finding, the government had to show by a preponderance of the evidence, *see* 18 U.S.C. § 3583(e)(3), that Bedford, "with the intent to intimidate or coerce a significant portion of a civilian population, … knowingly threaten[ed] to commit … a terrorist act … and thereby caus[ed] a reasonable expectation or fear of the imminent commission of a terrorist act." 720 ILCS 5/29D-20(a). A "terrorist act" is "any act that is intended to cause or create a risk and does cause or create a risk of death or great bodily harm to one or more persons." 720 ILCS 5/29D-10(l).

We agree with counsel's contention that this challenge would be frivolous. Based on the evidence that the government presented at the revocation hearing, the district court could conclude more likely than not that Bedford threatened that a shooting would take place at the school. Besides playing a recording of the call for the court, the government offered testimony from a Madison County (Illinois) police officer that the Alton police department had received a call from a blocked number, and that the caller twice had said that a shooting would occur at Lewis & Clark College, where Bedford was a student. To show that the call had been made by Bedford, the government introduced evidence that police had traced the call's location to his apartment complex. The government also introduced evidence that Bedford had called his probation officer from the same number, that Bedford's mother had listed the number in her phone as "son," and that Bedford had sent several text messages from another phone identifying the blocked number as his. Further, the district court reasonably could infer Bedford's intent to intimidate people from "the circumstances surrounding the commission of the offense," *People v. Perez*, 725 N.E.2d 1258, 1265 (Ill. 2000); *see People v. Bona*, 118 N.E.3d 1272, 1287–88 (Ill. App. Ct. 2018), specifically, the tone and urgency of the caller's voice (the court said that it was "not just what was said, it's how it was said").

Relatedly, Bedford urges that the preponderance standard for revocation is unconstitutional and has moved to stay disposition of this appeal until the Supreme Court reviews *United States v. Haymond*, 869 F.3d 1153 (10th Cir. 2017), *cert. granted*,

139 S. Ct. 398 (2018), a Tenth Circuit opinion invalidating 18 U.S.C. § 3583(k), which mandates a prison term of at least five years for registered sex offenders who commit specific enumerated crimes while on supervised release. In *Haymond*, the Tenth Circuit found subsection (k) unconstitutional because it increases the statutory minimum penalty to which a defendant may be subjected and does so based on facts not found by a jury and not proved beyond a reasonable doubt. *See* 869 F.3d at 1162, 1166 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyene v. United States*, 570 U.S. 99 (2013); *United States v. Booker*, 543 U.S. 220 (2005)). But *Haymond* is inapplicable because § 3583(k) played no role in Bedford's sentence; he was sentenced under § 3583(e)(3), which merely authorizes a court to impose a term of imprisonment for a supervised-release violation and does so based on the original crime of conviction. *See United States v. McIntosh*, 630 F.3d 699, 702–03 (7th Cir. 2011) (holding that the rule in *Apprendi* does not apply to a sentence imposed after the revocation of supervised release).

Counsel next contemplates challenging the district court's calculation of the policy-statement range. Without any objection from Bedford, the court accepted the probation officer's calculation of a 30- to 37-month imprisonment range (based on a grade A violation and criminal history category of III). *See* U.S.S.G. §§ 7B1.1(a)(1)(B), 7B1.4. We find no fault with these calculations and agree with counsel that any claim of error would be frivolous.

Counsel also considers whether Bedford could argue that his above-range sentence of 47 months and 29 days exceeded the 5-year statutory maximum set forth in 18 U.S.C. § 3583(e)(3) for crimes in which the underlying offense had a maximum life sentence. But Bedford's underlying offense—possessing with intent to distribute 280 or more grams of cocaine base—allows for a maximum life sentence, 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii), so any challenge based on a violation of § 3583(e)(3) would be pointless.

Counsel then considers, but appropriately rejects as frivolous, an argument that Bedford's underlying drug offense no longer supported a 5-year revocation term under the recently passed First Step Act of 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194, § 404 (2018). This Act made provisions of the Fair Sentencing Act, sec. 2, § 401(b)(1), 124 Stat. 2372 (2010) (codified in 21 U.S.C. § 841(b)(1)(A)(iii)), retroactive to cocaine-base defendants sentenced before August 3, 2010. But Bedford was sentenced after that date and was held liable for more than 1000 grams of cocaine base, so his offense still carried a maximum sentence of life in prison under the Fair Sentencing Act. *See* 21 U.S.C. § 841(b)(1)(A); *see also United States v. Long*, 748 F.3d 322, 328, 330 (7th Cir. 2014).

Finally, counsel considers whether Bedford could challenge the substantive reasonableness of his sentence but rightly concludes that doing so would be futile. The district court sufficiently justified the sentence based on the factors in 18 U.S.C. § 3553(a), specifically, the nature and circumstances of the violation (noting the seriousness of threatening a school shooting); Bedford's history and characteristics (highlighting his violent history, including his previous convictions for battery and weapons offenses); and, "most important," the need to protect the public (citing Bedford's repeated violent behavior and the failure of his previous incarceration to deter him from committing new crimes). *See* 18 U.S.C. § 3583(e).

We GRANT counsel's motion to withdraw, DENY Bedford's "Motion to Hold in Abeyance," and DISMISS the appeal.